**Michael K. FRIZELLE, Appellant**

v.

**Rodney E. SLATER, Secretary of Transportation, Appellee**

No. 95–5248.

United States Court of Appeals, District of Columbia Circuit.

Argued April 1, 1997.

Decided April 25, 1997.

Eugene R. Fidell, Washington, DC, argued the cause and filed the briefs, for appellant.

Michael J. Ryan, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, and Paul S. Smith, Senior Trial Attorney, U.S. Department of Transportation, were on the brief for the appellee. Michael T. Ambrosino, Assistant U.S. Attorney, entered an appearance.

James J. Kelley, Washington, DC, was on the brief for amicus curiae National Veterans Legal Services Program.

Before: WALD, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Michael Frizelle petitioned the district court for review of a decision of the Secretary of Transportation, acting through the Coast Guard Board of Correction of Military Records. He challenged the Board's failure to delete several disparaging comments in an Officer Evaluation Report ("OER") that he received early in his career as a Coast Guard officer, and its decision not to delete from his record the fact that he had twice been passed over for promotion to lieutenant, resulting in his discharge. The district court granted summary judgment for the Secretary. Because the Board failed to address two of Frizelle's arguments that are not facially frivolous, we reverse and remand.

## I.

Frizelle joined the Coast Guard Reserve in 1985, after serving nearly eight years as an enlisted man in the United States Air Force. He was selected for training as an officer in 1986, and commissioned as an ensign in February, 1987. He was stationed at the Coast Guard's Eighth District Office in New Orleans, where he ultimately served as assistant chief of the Reserve Programs Section. In that capacity, he was responsible for many of the office's computer systems, as well as a "grab bag" of special assignments.

On his first OER, Frizelle received generally strong marks from his supervisor and from the Chief of the Reserve Branch, who described him as "[a] very competent ensign and well qualified for promotion with his peers." Frizelle's second OER, covering the

period from October 1, 1987 to March 3, 1988, was markedly different in tone. Although his supervisor and the chief made several positive comments, they also made several disparaging comments, including the following:

His performance has been good in some areas but lacked effort in others.... Areas where performance has been less than expected are: system efforts were plagued by much down-time, confusion and many lingering problems due to his not delving sufficiently into system publications in an effort to learn and head off problems; often lead [sic] by problems rather than taking charge and leading the system; has had difficulty assessing areas of responsibility and establishing clear goals and objectives; has not kept supervisor adequately informed regarding status of ongoing projects; does not possess rudimentary familiarity with publications necessary to conduct research and develop definitive answers; has not demonstrated the ability to take charge of projects from inception to completion; has not managed to effectively monitor and complete many assigned projects....

One problem area that has had an impact on the Branch has been his difficulty fostering a cooperative working relationship with personnel from other sections within the Branch who are dependent on him for systems support. This situation has necessitated his Supervisor's involvement in routine situations that should have been handled at a lower level. Contributing to this problem is the fact that he has not kept appropriate interests apprised of changing situations; this has caused numerous misunderstandings and ill feelings between sections....

Frizelle has been tasked with many well-defined responsibilities this evaluation period and has not consistently produced the desired results. Performance due in part to the technical nature of his computer system related work; but part is also due to his inability to master the time management and interpersonal communications requirements of a staff position. He was counseled midway through this reporting period regarding his specific responsibilities, his performance, projects he was expected to accomplish, and aspects of his performance that needed attention....

Works hard to achieve objectives; frequently misses them.... [M]isses deadlines due to unanticipated delays and unrealistic promises. Flawed computer equipment and software installations repeatedly caused us to lose the capability to access the mainframe. System down time was extensive but is improving. Much time spent pursuing air shipment of 32' [ports and waterways boat] only to find prohibitive cost factor ignored. Missed letter deadline responding to [Commandant] query....

The OERs required Frizelle's supervisor and the Chief of the Reserve Branch to evaluate Frizelle on a numerical scale from one to seven in a variety of categories. His numerical marks were also somewhat lower in several categories on the second OER than they had been on the first.

Frizelle's third OER contained no similar comments, and indicated that he had made "marked" improvements. Shortly after the end of that period, he left the Eighth District Office and began flight school. At approximately that time, he was promoted from ensign to lieutenant (junior grade). He subsequently served as a helicopter co-pilot in Coast Guard search and rescue operations. In that capacity, he received a Coast Guard award for courage and skill while participating in a lengthy offshore lifesaving mission. In both 1990 and 1991, however, Frizelle was passed over for promotion to lieutenant. By statute, any officer of the Regular Coast Guard serving as a lieutenant (junior grade) who is passed over for promotion to lieutenant twice must be honorably discharged or, if eligible, retired. 14 U.S.C. § 282 (1994). Accordingly, Frizelle filed an application to the Coast Guard Board of Correction of Military Records pursuant to 10 U.S.C. § 1552, asking the Board to delete his second OER, or alternatively to redact it to eliminate several of the critical comments, and to void the two passovers for promotion. While his application was pending before the Board, Frizelle was discharged.

Frizelle challenged the second OER as inaccurate and unjust on several grounds. Among other things, he alleged that the comments relating to his management of the computer system failed to give him credit for significant accomplishments; that the comments describing poor interpersonal skills were the result of manipulation by a malcontent and verbally abusive chief warrant officer who repeatedly went over Frizelle's head to complain to his supervisors; that his superiors were biased against him because of his desire to attend flight school; that the comments relating to the transfer of the boat and the missed deadline were inaccurate and, in any case, occurred outside the reporting period; and that he had not received counseling from his supervisor at the beginning and end of the reporting period as required by the Coast Guard's Personnel Manual. Without addressing these arguments in detail, the Board denied Frizelle's application, finding that he had not established that the Coast Guard had committed any "errors" or "injustices." 10 U.S.C. § 1552. Frizelle thereafter filed a petition for review in the district court.

The district court granted Frizelle's motion for summary judgment and remanded to the Board, finding that it had not adequately explained its reasoning. On remand, the Board concluded that two of Frizelle's contentions had merit. First, it found that the sentence concerning the boat related to a matter from the prior reporting period, and deleted that sentence. Second, it found that the reference to the "mainframe" was inaccurate, since Frizelle's office did not have a mainframe computer, and changed the word "mainframe" to "system." The Board declined to strike the OER in its entirety or to make any other changes. It also concluded that the disputed OER was consistent with Frizelle's other OERs, and that, in light of the relatively minor relief being awarded, it would not void the promotion passovers. On rehearing, the district court granted sum-

mary judgment for the Secretary, finding that the Board had adequately explained its decision. This appeal followed.

## II.

■ Under 10 U.S.C. § 1552, the Secretary of Transportation has authority to correct any military record of the Coast Guard when "the Secretary considers it necessary to correct an error or remove an injustice." [1] Except with respect to certain records relating to promotion or enlistment decisions, the Secretary must act through a civilian board. Decisions of the civilian board are subject to review under § 706 of the Administrative Procedures Act, 5 U.S.C. § 706. *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1404 (D.C.Cir.1995); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1513–14 (D.C.Cir.1989); *see also Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). On review of a grant of summary judgment, we review the Board's decision *de novo*, applying the same standards as the district court. *Kidwell v. Department of the Army*, 56 F.3d 279, 286 (D.C.Cir.1995). Hence, we defer to the Board's decision unless it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence.

■ Applying this standard, we conclude that many of the challenges Frizelle has raised to the Board's decision are without merit. While the Board could have explained its reasons for rejecting Frizelle's arguments in more detail, "an agency's decision [need not] be a model of analytic precision to survive a challenge: A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Dickson*, 68 F.3d at 1404 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)). All that is required is that the Board's decision "minimally contain 'a rational connection between the facts found and the choice made.'"

1. 10 U.S.C. § 1552(a)(1) provides:

The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph

(2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Transportation may in the same manner correct any military record of the Coast Guard.

*Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). Here, the Board's decision can reasonably be interpreted as a statement that Frizelle had not shown sufficient evidence of bias on the part of the officers who prepared the OER to "overcome the 'strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" *Collins v. United States*, 24 Cl.Ct. 32, 38 (1991), *aff'd*, 975 F.2d 869 (Fed.Cir. 1992) (quoting *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (Ct.Cl.1979)). Thus, we defer to the Board's reasoning with respect to Frizelle's challenges concerning his computer skills, his relations with the chief warrant officer, and his superiors' annoyance at his desire to attend flight school. We also defer to the Board's conclusion that Frizelle was not prejudiced by the fact that he did not receive substantive OERs while he was in flight school because other officers in the same position were evaluated in the same way. However, because the Board's decision did not respond to two of Frizelle's arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition, we conclude that the Board's decision was arbitrary.

■ First, the disputed OER stated that Frizelle had missed a deadline in responding to an inquiry from the commandant. Frizelle argued before the Board that this comment was unfair, both because it related to a matter beyond his control, and because it occurred prior to the reporting period covered by the OER. He contended that the task of responding to the inquiry had been given to a subordinate who subsequently retired from the Coast Guard without completing his assignment. The Board responded that Frizelle "has not shown the comment was inaccurate ... since [Frizelle], according to a member of the rating chain, 'inherited' those projects that the [subordinate] did not complete. The performance described in the OER is a description of how [Frizelle] pursued these projects."

■ As Frizelle notes, these comments fail to respond to his contention that the missed deadline did not occur within the reporting period. The Coast Guard Personnel Manual prohibits the officers in the rating chain that prepares an OER from discussing any performance or conduct of the reported-on officer that occurred outside the reporting period. The Coast Guard, like the military departments and agencies in general, is bound to follow its own regulations. *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957); *Ortiz v. Secretary of Defense*, 41 F.3d 738, 741 (D.C.Cir.1994); *Ingram Barge Co. v. United States*, 884 F.2d 1400, 1405 (D.C.Cir.1989). Although the rules in the Personnel Manual may not qualify as binding regulations for all purposes, *cf. Jolly v. Listerman*, 672 F.2d 935, 940–41 (D.C.Cir.), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982), the Board chose to delete the reference to Frizelle's handling of the boat transfer on the grounds that it referred to a matter that "would have been apparent" prior to the beginning of the reporting period. The Board thus treated the rule prohibiting reference to matters outside the reporting period as binding upon it, and we defer to its judgment. Yet the Board's treatment of the missed deadline focuses solely on whether the charge was accurate, as opposed to whether it unfairly faulted Frizelle for a matter that his evaluators were barred from considering. With respect to Frizelle's second challenge on this issue, the Board has not given "a reason that a court can measure" for its decision. *Kreis*, 866 F.2d at 1514.

■ Second, Frizelle alleged before the Board that he did not receive any counseling during the reporting period covered by the disputed OER. The Coast Guard Personnel Manual explicitly requires that supervisors meet with ensigns and lieutenants (junior grade) under their supervision at the beginning and end of each reporting period, and maintain an Officer Support Form ("OSF") on all such officers. Frizelle contended that the only counseling he received consisted of a meeting with the Chief of the Reserve Branch during the prior reporting period concerning the missed deadline. The Board responded that Frizelle had "failed to prove that he was not counseled," noting that the

chief had stated in the OER that Frizelle had been "counseled midway through this reporting period regarding his specific responsibilities, his performance, projects he was expected to accomplish, and aspects of his performance that needed attention." The Board also noted that:

> [Frizelle] did not submit the OSF for the Board to review. [The Personnel Manual] provides that supervisors *"shall conduct"* beginning and end of period meetings and are required to maintain an OSF on all reported-on officers in the grades of ensign and lieutenant (junior grade). Although the Board does not have the OSF to review, the OER itself shows that the applicant was counseled.

We conclude that this answer did not adequately respond to Frizelle's complaint.

Normally, the Board is entitled to presume that statements in an OER are fair and accurate unless an applicant presents specific evidence to rebut that presumption. *See, e.g., Collins,* 24 Cl.Ct. at 38. The Board could not reasonably expect Frizelle to support his claim by producing an OSF if in fact his supervisor never prepared the form, however. Furthermore, on its face the OER suggests that the officers in Frizelle's rating chain did not follow proper procedure. The OER refers to counseling "midway through this reporting period," whereas the Personnel Manual requires counseling at the beginning and at the end of the reporting period. Further, the statement in the OER relating to counseling came from the Chief of the Reserve Branch, who functioned as Frizelle's reporting officer, one step higher in the rating chain than his immediate supervisor. The Personnel Manual requires that the supervisor conduct the meetings and maintain the OSF. In sum, the OER itself, in combination with Frizelle's assertion that he did not receive counseling, suggests a deviation from Coast Guard policy. Again, in citing the Personnel Manual in its decision, the Board indicated that it treated the Manual rules as binding upon the Coast Guard.

Absent any discussion of these matters by the Board, we cannot conclude that these apparent deviations from Coast Guard policy are trivial. The Personnel Manual contemplates a higher level of supervision and monitoring for junior officers than for more experienced officers. The requirement of counseling at the beginning and end of each period would appear to serve this function. Counseling at the beginning of the period, for example, might enable an officer to learn what weaknesses his supervisors perceived in his performance and to identify areas in which he needed to improve. Counseling at the end of a period might enable the supervisor to explain his evaluation decisions and give the officer a chance to comment on or explain any perceived inadequacies. Although counseling in the middle of the period by an officer who was not Frizelle's direct supervisor might have served these purposes adequately, the Board's response provides no basis from which we could make that determination.

Had the Board found that it was unlikely that Frizelle would be promoted even if the second OER were stricken in its entirety, a remand might be unnecessary. However, the Board found only that the particular changes it made to the OER—the deletion of the sentence referring to the boat transfer operation and replacement of the word "mainframe" with "system"—left it "virtually unchanged." On remand the Board may decide to make further changes to the OER in response to Frizelle's arguments about the missed deadline and the absence of counseling. Indeed, given the nature of the derogatory comments in the disputed OER, if the Board concludes that Frizelle did not receive counseling in the manner required by the Personnel Manual, it might determine that the proper remedy is to strike the OER in its entirety.

Additionally, we note that the Board's decision not to void Frizelle's passovers for promotion may have been influenced by its conclusion that "[t]he disputed OER is consistent with all of the other substantive OERs in the applicant's record." This conclusion is contrary to substantial evidence that Frizelle produced. In comparing the disputed OER to Frizelle's marks on the other OERs, the Board focused exclusively on his overall numerical ranking. The Board noted that Frizelle received a numerical

mark of 4 on each of the OERs, with the exception of the first OER, on which he received a 5. According to the form, both of these rankings are reserved for "the many competent professionals who form the majority of [the relevant] grade." The Board overlooked the fact that Frizelle's numerical marks in the individual categories rated on the second OER were equal to or lower than his marks on other OERs in virtually every instance.[2] More importantly, the Board's focus failed to take into account the particularly damaging effect that disparaging written comments have on an evaluation. Quite apart from the numerical marks, the written comments on the second OER—two of which the Board has already struck—contribute to its overwhelmingly negative tone. None of Frizelle's other OERs contain any similar comments. To the contrary, Frizelle's most recent OER described him as "[r]eady for greater responsibility ... [and] highly recommended for promotion," and the two preceding OERs described him as "[s]trongly recommended for promotion with his peers."

 Under these circumstances, even if the Board decides not to strike the OER or redact it further, it still must reconsider the decision not to void the passovers, giving appropriate weight to the significant differences between the disputed OER and Frizelle's other OERs. The Board applied the test of *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (Ct.Cl.1982), to determine whether it was appropriate to void the passovers. Under this standard, once an applicant has proven a legal error, the Board must determine whether the error was "prejudicial or harmless," looking not at whether "the officer would in fact have actually been promoted in the absence of the error," but merely at whether "promotion was not definitely unlikely or excluded." *Id.* 678 F.2d at 174. There are two components to this question: first, whether the officer's record was "prejudiced by the errors, in the sense that

the record appears worse than it would in the absence of the errors," and second, if there was prejudice, whether it is unlikely that the officer would have been promoted in any event. *Id.* at 176. As to the first prong, the burden of proof rests with the officer seeking to void the passovers. As to the second, the officer has the burden of producing a prima facie case, but the government has the ultimate burden of persuasion.[3] *Id.* at 175–77. On remand, therefore, once the Board determines what further changes, if any, are appropriate in the OER, it should decide whether Frizelle has met his burden of proof under *Engels*, explaining the basis for its conclusion, and then, if necessary, consider whether the Coast Guard has sustained its burden.

Accordingly, we reverse the grant of summary judgment and remand the case to the district court with instructions to remand the case to the Board for further proceedings.

---

**2.** The one exception was the numerical ranking for stamina. Frizelle was ranked at level 5 on all of his evaluations except for his third OER, where he was ranked at level 4.

**3.** The rationale for the burden-shifting rule is that the government has "far greater knowledge

of the facts, statistics, and operations of the promotions selections process, [and] is in [a] much better position to produce evidence and materials showing the lack of adequate nexus in spite of the claimant's *prima facie* case." *Engels*, 678 F.2d at 175.