United States Court of Appeals

 FOR THE DISTRICT OF COUMBIA CIRCUIT

 Argued January 24, 2000 Decided June 27, 2000 

 No. 99-1149

 State of Iowa and 
 Iowa Telecommunications and Technology Commission, 
 Petitioners

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 Bell Atlantic Telephone Companies, et al., 
 Intervenors

 On Petition for Review of an Order of the 
 Federal Communications Commission

 Michael D. Hays argued the cause for petitioners. With 
him on the briefs were Kenneth D. Salomon and J.G. Har-
rington.

 James M. Carr, Counsel, Federal Communications Com-
mission, argued the cause for respondents. With him on the 
briefs were Christopher J. Wright, General Counsel, Daniel 
M. Armstrong, Associate General Counsel, and John E. Ingle, 
Deputy Associate General Counsel. Catherine G. O'Sullivan 
and Nancy C. Garrison, Attorneys, U.S. Department of Jus-
tice, entered appearances.

 Donald M. Falk, Michael E. Glover, Edward H. Shakin, 
Dan L. Poole, Robert B. McKenna, William F. Maher, Jr., 
Stephen L. Goodman, Richard White Jr., Michael S. Pabian, 
David Cosson, Lawrence E. Sarjeant, Linda Kent, Keith 
Townsend, John Hunter and Julie Rones were on the brief 
for intervenors. L. Marie Guillory and Lawrence W. Katz 
entered appearances.

 Before: Ginsburg, Sentelle, and Rogers, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Ginsburg.

 Ginsburg, Circuit Judge: The State of Iowa and the Iowa 
Telecommunications and Technology Commission (collective-
ly, Iowa) petition for review of a declaratory ruling by the 
Federal Communications Commission. The Commission held 
that the Iowa Communications Network (ICN) is not a com-
mon carrier and therefore not a "telecommunications carrier" 
within the meaning of s 254(h) of the Telecommunications 
Act of 1996, 47 U.S.C. s 254(h). Consequently, the ICN is 
ineligible for direct universal service support for the discount-
ed telecommunications services it provides to schools, librar-
ies, and rural health care providers. See Federal-State Joint 
Board on Universal Service, Declaratory Ruling, 14 F.C.C.R. 
3040 (1999) (Declaratory Ruling).

 Iowa raises two arguments in its petition for review. First, 
Iowa claims the Commission erred by determining that the 
ICN is not a common carrier. Second, Iowa claims that 
regardless whether the ICN is a common carrier, it is a 
"telecommunications carrier" within the meaning of the 1996 
Act, and therefore is eligible for direct universal service 
support. To the extent the latter claim is not foreclosed by 
our recent decision in Virgin Islands Tel. Corp. v. FCC, 198 

F.3d 921, 922, 925 (1999) (upholding as reasonable FCC's 
position that " 'telecommunications carrier' means essentially 
the same as common carrier"), it is foreclosed by the defer-
ence we owe the Commission's reasonable interpretation of 
the statute it administers, pursuant to step two of the analysis 
in Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984).

 With respect to Iowa's first claim, however, the Commis-
sion failed to address Iowa's argument that offering services 
to all potential customers to whom the carrier, under state 
law, may provide services makes the ICN a common carrier 
for purposes of the 1996 Act. We therefore grant the petition 
for review and remand this matter to the Commission to 
consider Iowa's argument in the first instance.

 I. Background

 The Iowa legislature established the ICN in 1989 to pro-
vide heavily subsidized high-speed telecommunications ser-
vices throughout the state, particularly to areas that may be 
underserved by the local exchange carrier. The legislature 
did not, however, authorize the ICN to serve everyone in the 
state that could use its services; in particular, the ICN may 
not provide services to individuals or to most private busi-
nesses. Rather, the ICN may provide service only to "public 
and private agencies," Iowa Code s 8D.11(2), defined as 
follows:

 "Private agency" means an accredited nonpublic school, a 
 nonprofit institution of higher education eligible for tu-
 ition grants, or a hospital licensed pursuant to chapter 
 135B or a physician clinic to the extent provided in 
 section 8D.13, subsection 16.
 
 "Public agency" means a state agency, an institution 
 under the control of the board of regents, the judicial 
 branch ... a school corporation, a city library, a regional 
 library ... a county library ... or a judicial district 
 department of correctional services ..., an agency of the 
 federal government, or a United States post office which 
 
 receives a federal grant for pilot and demonstration 
 projects.
 
Iowa Code s 8D.2(4)-(5).

 Iowa Code s 8D.9 further divides the class of "public and 
private agencies" into two subclasses. First, Certifying 
Users, which are institutions of higher education, area edu-
cation agencies, and certain United States Post Offices, were 
required to certify by July 1, 1994 their intention to connect 
to the network. Any Certifying User that did not certify its 
intention by that date may not use the ICN without specific 
legislative authorization. Any Certifying User that did timely 
certify its intention to connect to the ICN must receive all its 
telecommunications services from the ICN unless it obtains a 
waiver based upon certain objective criteria specified in the 
statute. See id. s 8D.9(2). Second, Preauthorized Users, 
which are all other public and private agencies, may connect 
to the ICN at any time without further authorization from the 
legislature, and may choose which telecommunications ser-
vices to take from the ICN. Although Iowa points to no 
statute requiring that the ICN serve all authorized users, the 
parties agree that in practice the ICN will provide service to 
any Preauthorized User and to any timely Certifying User 
that requests service.

 Under s 254(h)(1) of the 1996 Act, a "telecommunications 
carrier" must provide services at discounted rates to schools, 
libraries, and rural health care providers, and is entitled to 
receive from the Commission, in an amount equal to the 
aggregate discount given to such entities, either a reimburse-
ment or an offset against the carrier's obligation to partici-
pate in or contribute to the universal telecommunications 
service fund. 47 U.S.C. s 254(h)(1). "Telecommunications 
carrier" is defined as "any provider of telecommunications 
services," id. s 153(44), and "telecommunications service" is 
defined as "the offering of telecommunications for a fee 
directly to the public, or to such classes of users as to be 
effectively available directly to the public, regardless of the 
facilities used," id. s 153(46).

 The Commission determined that "telecommunications ser-
vices" means "only telecommunications provided on a com-
mon carrier basis." Federal-State Joint Board on Universal 
Service, Report & Order, 12 F.C.C.R. 8776, 9177 p 785 (1997). 
Therefore, in the Commission's scheme for administering 
s 254, a carrier that provides a service on a non-common 
carrier basis is not a "telecommunications carrier" and hence 
is ineligible for universal service support with respect to that 
service.

 In response to Iowa's request for a declaratory ruling, the 
Commission held that the ICN is not a common carrier. See 
14 F.C.C.R. at 3056 p 29. Specifically, the Commission noted 
that the primary characteristic of a common carrier is that it 
"holds [it]self out to serve indifferently all potential users," id. 
at 3050 p 21, and determined that the ICN failed this test for 
two reasons: The ICN does not hold itself out to serve all 
users, but is instead limited to serving only "public and 
private agencies," as defined by the statute law of Iowa, see 
id. p p 22, 24-25; and the ICN impermissibly discriminates 
among users in the terms upon which it offers service, see id. 
at 3051 p 23. Iowa petitions for review of the Declaratory 
Ruling.

 II. Analysis

 Before the Commission, Iowa argued, among other things, 
that the ICN is a common carrier because it offers service to 
all the users it is authorized by law to serve:

 [T]he case law firmly establishes that ICN only need 
 serve a specified clientele indifferently to qualify as a 
 common carrier.... [ICN's] customers are determined 
 by its governing statute, not by the ICN itself. Under 
 that statute the Legislature designated broad classes of 
 potential customers and required the ICN to serve all of 
 the members of those classes.
 
In its brief to this court, Iowa reiterates this argument and 
relies primarily upon two cases for support: FCC v. Midwest 
Video Corp., 440 U.S. 689 (1979), and National Ass'n of 

Regulatory Util. Comm'rs v. FCC (NARUC), 525 F.2d 630 
(D.C. Cir. 1976).

 In Midwest Video the Commission had promulgated regu-
lations requiring cable television systems to allocate channels 
for public, educational, government, and leased access users. 
440 U.S. at 693. Although the regulations required that the 
public and leased access channels be open to all potential 
users, use of the educational and government access channels 
was limited respectively to "local educational authorities" and 
the "local government." 47 C.F.R. s 76.254(a)(2)-(3) (1977). 
A private organization could not air an educational program 
on the educational access channel because it would not come 
within the class of users authorized by law. Yet the Supreme 
Court held that the access rules, by "transferr[ing] control of 
the content of access cable channels from cable operators to 
members of the public" had "relegated cable systems, pro 
tanto, to common-carrier status." 440 U.S. at 700-01.

 In NARUC this court reviewed the Commission's determi-
nation that Specialized Mobile Radio Systems (SMRS) provid-
ing transmission services were not common carriers. 525 
F.2d at 639. The court announced a test for common car-
riage that focused primarily upon whether the carrier holds 
itself out indiscriminately to serve all to whom it can "legally 
and practically be of use." Id. at 640-42. We wrote:

 It is not an obstacle to common carrier status that SMRS 
 offer a service that may be of practical use to only a 
 fraction of the population, nor that the [FCC's] Order 
 limits possible subscribers to SMRS services to eligibles 
 under Sections 89, 91, and 93 of the Regulations. The 
 key factor is that the operator offer indiscriminate ser-
 vice to whatever public its service may legally and prac-
 tically be of use.
 
Id. at 642.

 Both Midwest Video and NARUC can be read as approving 
the general rule that a carrier offering its services only to a 
legally defined class of users may still be a common carrier if 

it holds itself out indiscriminately to serve all within that 
class. That is precisely Iowa's argument.

 Although the Commission expressly recognized in the De-
claratory Ruling that the ICN's customer base is restricted 
by state law rather than by the carrier's own choice, see 14 
F.C.C.R. at 3053 p 25, it did not respond to this argument. 
Before this court, the Commission first claims that the argu-
ment was not clearly enough presented before the agency to 
elicit an answer. True it is that the State did not cite cases 
before the agency, but it clearly made the argument--as is 
evident in the passage quoted in the first paragraph of this 
part of our opinion. The Commission's only substantive 
response is that Midwest Video and the other cases cited by 
Iowa involved the provision of a specialized service that 
"necessarily limited the class of customers that the carrier 
would serve." This response fails to address the issue wheth-
er a legal prohibition upon serving some potential customers 
to whom the service would be of use--in Midwest Video, for 
example, those capable of producing video programming suit-
able for the government and educational access channels--is 
inconsistent with being a common carrier.

 We are not suggesting that Midwest Video or NARUC or 
the other cases Iowa cites require a decision in Iowa's favor. 
Rather, our point is that the Commission's failure to address 
Iowa's argument requires that we remand this matter for the 
Commission's further consideration. See, e.g., Frizelle v. 
Slater, 111 F.3d 172, 177 (D.C. Cir. 1997) (remanding where 
agency "did not respond to two ... arguments, which do not 
appear frivolous on their face and could affect the [agency's] 
ultimate disposition"); AT&T Corp. v. FCC, 86 F.2d 242, 247 
(D.C. Cir. 1997) (remanding where Commission "completely 
failed to address" argument raised in ex parte letter).

 The Commission also ruled that the ICN is not a common 
carrier because it impermissibly discriminates among users in 
the terms of service it offers. The Commission identified 
three distinct forms of discrimination: (1) Certifying Users 
but not Preauthorized Users must take all or none of their 
telecommunications services from the ICN; (2) some Certify-

ing Users may receive waivers of the all-or-none requirement; 
and (3) those that did not timely certify, as well as all 
potential users that are not public or private agencies, are 
excluded entirely from using the ICN. Declaratory Ruling, 
14 F.C.C.R. at 3051 p 23.

 In its opening brief to this court, Iowa pointed out that 
common carriers typically treat different classes of customers 
differently, and that the Communications Act itself contem-
plates reasonable distinctions in the terms and conditions of 
service offered to different classes of customers. See 47 
U.S.C. s 201(b) ("communications ... may be classified into 
... such [ ] classes as the Commission may decide to be just 
and reasonable, and different charges may be made for the 
different classes of communications"). In its responsive brief, 
the Commission reiterated but did not meaningfully argue its 
first and second grounds for saying that the ICN unduly 
discriminates. We therefore follow the Commission's lead in 
focusing exclusively upon the third form of discrimination. 
See SEC v. Banner Fund Int'l, 211 F.3d 602, 613-14 (D.C. 
Cir. 2000) (declining to address "asserted but unanalyzed" 
argument not developed after being challenged by adverse 
party). Even as to that ground, the Commission's defense is 
conclusory:

 [W]hile common carriers may permissibly engage in 
 some discrimination among classes of users ... [the] 
 exclus[ion of] entire classes of potential users from its 
 customer base simply because they do not fit the Iowa 
 Code's definition of a private or public agency ... is 
 irreconcilable with well-established principles of common 
 carriage.
 
Moreover, as the Commission conceded at oral argument, this 
claim of discrimination raises precisely the same question as 
the Commission's first reason for denying the ICN common 
carrier status: Whether holding out service only to the class 
of users authorized by law to receive it is inconsistent with 
being a common carrier. Therefore, discrimination of the 
sort here claimed is not an independent basis for denying the 
ICN's common carrier status, and does not alter our conclu-

sion that we must remand this matter for the Commission's 
further consideration.

 III. Conclusion

 The Commission failed to address Iowa's argument that the 
ICN is a common carrier because it holds out service indis-
criminately to all the users it is authorized by law to serve. 
Therefore, we grant the petition for review and remand this 
case for further consideration by the Commission.

 So ordered.