**Nathaniel R. THOMPSON, III, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendant.**

**Case No. 1:14–cv–1328 (GBL/MSN).**

United States District Court, E.D. Virginia, Alexandria Division.

Signed July 20, 2015.

Thomas M. Craig, Fluet Huber + Hoang PLLC, Woodbridge, VA, for Plaintiff.

Dennis Carl Barghaan, Jr., United States Attorney's Office, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Plaintiff Nathaniel R. Thompson, III ("Thompson" or "LTG Thompson")'s Motion for Summary Judgment (Doc. 20) and Defendant United States of America's Motion for Summary Judgment (Doc. 24). This case involves LTG Thompson's eligibility to transfer education benefits under the Post 9/11 GI Bill.

The issue before the Court is whether the Court should grant Plaintiff LTG Thompson's Motion for Summary Judgment or Defendants' Motion for Summary Judgment, where Plaintiff argues that he is entitled to relief because: the Army failed to provide proper counseling regarding his benefits; reliable sources at the Army provided him with incomplete, inaccurate, and false information; and that the Army failed to provide notice that failure of LTG Thompson to elect to transfer his benefits while on active duty would constitute a waiver of his right to transfer those benefits in the future, but where Defendants argue that the ABCMR's decision

was neither arbitrary or capricious and Plaintiff had actual or constructive knowledge of the requirement prior to his retirement. The Court DENIES Defendants' Motion for Summary Judgment and GRANTS Plaintiff's Motion for Summary Judgment, because there is no genuine dispute of material fact that the ABCMR committed clear error in denying Plaintiff's request to "correct" his record.

## I. BACKGROUND [1]

Plaintiff Nathaniel Ross Thompson, III, is a retired Lieutenant General of the United States Army. (Doc. 12, ¶ 6.) On April 1, 2010, LTG Thompson retired from the Army after nearly 36 years of service. (*Id.*) In 2008, Congress passed the "Post 9/11 Veterans Education Assistance Act of 2008," or the "Post 9/11 GI Bill" to provide monetary benefits to eligible military members to assist veterans in readjusting to civilian life, and particularly to assist veterans in paying for higher education. 38 U.S.C. §§ 3301–25. The statutory framework of the Post 9/11 GI Bill creates a matrix of the amount of time that a member of the military must serve in order to be eligible. *Id.* Eligible members are entitled to 36 months of education benefits so long as the member "is pursuing an approved program of education." *Id.* § 3313(a). Additionally, veterans who were eligible for retirement on August 1, 2009 were entitled to transfer their educational benefits to their spouse or children. *Id.* § 3319(b)(2). However, "[a]n individual approved to transfer entitlement to educational assistance under this section may transfer such entitlement only while serving as a member of the armed forces when the transfer is executed." *Id.* § 3319(f)(1). According to a directive issued by the U.S. Department of Defense, entitled "Directive–Type Memorandum (DTM) 09–003, Post–9/11 GI Bill" (June 22, 2009, incorporating Change 2, September 14, 2011) ("DTM 09–003"), the Secretaries of the Military Departments were required to provide eligible service members with individual counseling on the benefits to be afforded under the Post 9/11 GI Bill. Of particular importance here, the statute provides that "[A]n individual approved to transfer entitlement to educational assistance under this section may transfer such entitlement only while serving as a member of the armed forces when the transfer is executed." *Id.*

LTG Thompson, based on his period of service and nature of discharge, was entitled to receive educational assistance under the Post 9/11 GI Bill. (Doc. 12, ¶ 10.) Additionally, LTG Thompson was eligible to transfer his education benefits to his spouse or children. (*Id.*) LTG Thompson never received the individual counseling required under DTM 09–003. AR8. Plaintiff alleges that because he did not receive counseling he was unaware of the requirement that elect to transfer his benefits prior his retirement on April 1, 2010. (Doc. 12, ¶ 45.)

On October 14, 2011, plaintiff filed an application (DD Form 149) with the Army Board for Correction of Military Records ("ABCMR") seeking the correction of his military records; more specifically, plaintiff indicated that he did not "transfer [his] Post 9/11 GI Bill benefits to [his] children" while he remained on active duty as the law requires, and requested that he "be allowed to make that election now by having the transfer benefit reinstated." AR179–97. Plaintiff explained that he was not aware that he had to make the election

---

1. These facts were taken from the Parties' statements of undisputed material facts. (Docs. 20 and 24).

prior to his retirement and that "the information was not covered in any of the retirement briefings that h[e] attended, nor was [he] given any information paper that explained the benefit or requirement to transfer prior to leaving active status." AR180.

On November 15, 2011, pursuant to its regulatory authority, *see* Army Reg. 15–185, ¶¶ 1–10; 2–2(c), the ABCMR transmitted a copy of plaintiff's application to the Army's Deputy Chief of Personnel. In its transmittal, the ABCMR requested that this command either take "administrative action ... if appropriate," and if not, to "furnish a comprehensive advisory opinion." AR204. On December 30, 2011, the Army Human Resource Command ("AHRC") issued an advisory opinion to the ABCMR, in which it recommended "disapproval" of plaintiff's application. AR174. That advisory opinion noted that plaintiff "did not complete the requirements in the TEB [Transfer of Education] benefits online database because he claims he was not aware of the requirement to transfer prior to leaving service." AR201. But, AHRC explained, Plaintiff's ignorance of the legal requirements did not justify the discretionary relief that he sought, especially given the amount of publicly-available information about the transfer requirements. AR202. Ultimately, AHRC recommended that the ABCMR deny plaintiff's application unless he could "provide evidence showing he attempted to transfer [his entitlement to benefits] prior to leaving military service and/or he was given false information by a reliable source about the rules of transferring education benefits." AR201–03.

Upon receipt of AHRC's advisory opinion, the ABCMR transmitted the opinion to plaintiff, and offered Plaintiff an opportunity to comment. On January 18, 2012, plaintiff submitted his comments to the ABCMR. AR198–99. Notwithstanding his comprehension of the AHRC's ultimate conclusion concerning what he needed to demonstrate, Plaintiff did not allege or submit evidence to the effect that he "was given false information by a reliable source about the rules of transferring education benefits"; rather, Plaintiff maintained that his "application clearly outline[d] the circumstances where he was given incomplete information." AR 198–99. On February 16, 2012, the ABCMR issued a six page unanimous decision denying Plaintiff's application. AR173–78. The ABCMR adopted the position advanced in AHRC's advisory opinion that Plaintiff's ignorance of the requirements could not justify an exercise of its discretion.

On February 14, 2013 Plaintiff filed a request with the ABCMR to reconsider its decision to "deny [his] application to restore [his] Transfer of Education Benefits (TEB) under the Post-9/11 GI Bill." AR 19–170. The gravamen of Plaintiff's reconsideration position was that the DOD's July 2009 policy on Post 9/11 GI Bill benefits required the Army to provide military members with "individual pre-separation counseling on the benefits," and then document the same. AR19–22. On this score, Plaintiff maintained, "[p]roper retirement counsel was not provided [to him], which resulted in denial of the benefits election decision [he] intended to exercise." AR19. In other words, because he did not receive such "pre-separation counseling," the ABCMR was required to allow him to amend his records to indicate that he *had* made a pre-retirement election to transfer his benefits to his children. AR12–16.

On November 14, 2013, the ABCMR denied Plaintiff's request for reconsideration in a separate opinion, concluding that none of the new evidence that Plaintiff had submitted warranted reconsideration of its earlier decision. AR3–9. After summariz-

ing plaintiff's new evidence and arguments, the ABCMR concluded that there was "no basis for granting the applicant's requested relief." AR9. The ABCMR found particularly significant Plaintiff's concession that "he became aware of the Post–9/11 GI Bill Information Paper in July 2009 ... [which] shows that eligible individuals include members of the Armed Forces, including active duty or Selected Reserve officer or enlisted Soldiers." AR8. This concession, according to the ABCMR, served to avoid any prejudice from plaintiff's lack of pre-separation counseling on Post–9/11 GI Bill benefits. AR8–9.

## II. STANDARD OF REVIEW

■ Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Normally, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[i]n a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record." *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 89 (D.D.C.2006). The ABCMR's final determination is reviewable under the standards set forth in the Administrative Procedure Act. 35 U.S.C. § 154(b)(4)(A); *see also Dickinson v. Zurko*, 527 U.S. 150, 165, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). A party seeking review of a board decision bears the burden of overcoming "the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C.Cir. 1997) (internal quotations and citation omitted); *see also Cone v. Caldera*, 223 F.3d 789, 793 (D.C.Cir.2000).

■ Under the APA, this Court may only set aside the ABCMR's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed.Cir.2005). The Court is therefore limited to the task of reviewing the agency action to determine whether the deciding body "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C.Cir.2005) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). The "function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 90 (D.D.C.2006).

■ More specifically, as the D.C. Circuit has recognized, the final decisions of military correction boards are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Air Force*, 866 F.2d 1508, 1515 (D.C.Cir.1989); *accord Piersall v. Winter*, 435 F.3d 319, 324 (D.C.Cir.2006); *Musengo v. White*, 286 F.3d 535, 538 (D.C.Cir. 2002); *Cone*, 223 F.3d at 793. This high degree of deference arises from the statutory language authorizing a Secretary of a military department—acting through civilian boards—to correct military records

"when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). As the Court in *Kreis* reasoned:

It is simply more difficult to say that the Secretary has acted arbitrarily *if he is authorized to act "when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice.

*Kreis*, 866 F.2d at 1514. It follows that only the "most egregious" Board decisions will fail to satisfy this deferential standard of review, *id.* at 1515, however, a plaintiff nevertheless can establish that the Board's decision-making process was flawed and in violation of the APA by showing that the Board did not consider or respond to an argument that does not appear "frivolous" on its face and "could affect the Board's ultimate disposition." *Roberts v. Harvey*, 441 F.Supp.2d 111, 118–19 (D.D.C.2006) (*quoting Frizelle*, 111 F.3d at 177); *see also Calloway v. Brownlee*, 366 F.Supp.2d 43, 53 (D.D.C.2005) ("[A]n agency action is arbitrary and capricious if the agency ... has entirely failed to consider an important aspect of the case presented.").

## III. ANALYSIS

The Court grants summary judgment to Plaintiff and denies summary judgment as to Defendants because Plaintiff has adequately shown that the ABCMR's decision was arbitrary, capricious, or contrary to law and that the tenets of justice require such a ruling.

 Judicial review of the final decision of a military correction board, like the ABCMR, is limited to a determination of whether the board's decision "is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle*

*v. Slater*, 111 F.3d 172, 176 (D.C.Cir.1997). Therefore, in reviewing a decision of the ABCMR, a court "must be able to conclude that the Board 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.' " *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C.Cir.2005) (internal citation omitted). Accordingly, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.' " *MD Pharm. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C.Cir.1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. 2856). Additionally, as the D.C. Circuit has recognized, the final decisions of military correction boards are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Air Force*, 866 F.2d 1508, 1515 (D.C.Cir.1989); *accord Piersall*, 435 F.3d at 324; *Musengo v. White*, 286 F.3d 535, 538 (D.C.Cir.2002); *Cone*, 223 F.3d at 793. Thus, the Court here may not substitute its judgment for the judgment of the Board.

In his October 14, 2011 application for correction to the ABCMR, Plaintiff explained that though he went to all the mandatory trainings prior to his retirement, he was never given information regarding the requirement that he transfer his educational benefits while on active duty. AR180–82. The ABCMR reviewed Plaintiff's October 2011 application and requested that the Army Chief of Personnel review it and take administrative action or issue a comprehensive advisory opinion. On December 30, 2011, the Army Human Resources Command ("AHRC") issued an advisory opinion explaining that LTG Thompson's ignorance of the requirement did not justify the discretionary relief

sought especially given the amount of publicly available information. AR202. The AHRC recommended that Plaintiff's application be denied unless he could "provide evidence showing he attempted to transfer [his entitlement benefits] prior to leaving military service and/or he was given false information by a reliable source about the rules of transferring education benefits." AR201. The ABCMR forwarded the AHRC's advisory opinion to Plaintiff and provided him with an opportunity to comment.

On January 18, 2012, LTG Thompson provided comments to the AHRC's advisory opinion. AR198–99. In its February 16, 2012 unanimous decision, the Board considered the application, comments, and supporting documents provided by Plaintiff as well as the AHRC's advisory opinion. AR173–78. The ABCMR's final decision included a recitation of Plaintiff's application request and an analysis of the evidence. Specifically, the ABCMR relied on the AHRC's opinion that the "[a] soldier should not be granted relief based on unawareness of the law," and that a massive public campaign regarding the Post 9/11 GI Bill and its requirements had taken place. AR175. Accordingly, the Board adopted the AHRC's findings and found no basis for granting Plaintiff's request.

In his February 14, 2013 request for reconsideration, LTG Thompson argued again that he should be allowed to correct his record to demonstrate an election to transfer benefits prior to his retirement. AR19–22. In his request, LTG Thompson restated his initial argument, but also added additional details. Particularly, he noted that in July 2009 he conducted research on the Post 9/11 GI Bill to confirm his eligibility and found a DOD-authored papered dated June 23, 2009 for which he relied. AR21. Plaintiff argued that the Information Paper "contained NO wording

of the requirement to transfer the benefit while still on active duty." AR21. Additionally, he asserted that the GOMO did not make the necessary adjustments to his pre-retirement counseling in light of the August 2009 transfer of benefits option, instead GOMO only added this counseling to the pre-retirement counseling *after* learning of LTG Thompson's situation. AR22. Finally, he noted that he did not receive any individual counseling and that he relied on false information from reliable Army sources. AR21. Again, the Board considered the evidence submitted by the Plaintiff.

In its November 14, 2013 decision, the ABCMR incorporated by reference its previous findings but also included an analysis of the new information provided by LTG Thompson in his application for reconsideration. AR3–9. Specifically, the ABCMR considered the DOD-authored document Plaintiff found and relied on in July 2009. AR4. The Board found that the document did in fact state that "an individual approved to transfer entitlement to educational assistance under this section may transfer such entitlement to the individual's family member *only while serving as a member of the Armed Forces.*" AR8 (citing AR40) (emphasis added). The ABCMR also concluded that while LTG Thompson did not receive information concerning the "Transfer Election Benefit" during his GOMO retirement processing, he was provided information regarding the Post 9/11 GI Bill during his out-processing. AR8. The ABCMR also found that, "[w]hile the applicant may have been provided incomplete information on the Post 9/11 GI Bill, he was counseled [generally] on the program." The Board found it persuasive that LTG Thompson conceded that he was aware of an Information Paper; the DOD-authored document, which showed that the option to transfer benefits was only available to members of the

Armed Forces on active duty. Based on this reasoning, the Board denied LTG Thompson's application for reconsideration. AR9.

Here, Plaintiff argues that the ABCMR's February 16, 2012 final decision and subsequent denial for reconsideration on February 14, 2013, violated the ABCMR's mandate to correct errors and injustices committed by the Army pursuant to 10 U.S.C. § 1552. (Doc. 12.) Specifically, Plaintiff asserts that he is entitled to relief because: the Army failed to provide proper counseling regarding his benefits; reliable sources at the Army provided him with incomplete, inaccurate, and false information; and finally that the Army failed to provide notice that failure of LTG Thompson to elect to transfer his benefits while on active duty would constitute a waiver of his right to transfer those benefits in the future. *Id.* For the first time, Plaintiff also claims that contrary to the record, he found the DOD-authored document on the internet *after* he retired not before. (Doc. 28, at 4.)

Here, the Court's decision does not turn on whether LTG Thompson was in possession of the DOD authored document before or after his retirement. Instead, the Court's decision is based on the law, justice, and fairness. LTG Thompson admirably served his country for over 35 years. Through his service he became entitled to certain benefits, including those conferred in the Post 9/11 GI Bill. Through no fault of his own, LTG Thompson was never afforded the benefit of individual counseling concerning his rights under the 9/11 GI Bill. The military's own directives require that the military departments provide eligible active-duty service members with "individual pre-separation . . . from active duty counseling on the benefits under the Post 9/11 GI Bill and document accordingly." DTM09–003. It seems that Defen-

dants seek to avoid their responsibilities under the bill, but yet force LTG Thompson to abide by his. The Court does not agree.

The Court understands that the DOD authored document does provide that "[a]n individual approved to transfer entitlement to education assistance under this section may transfer such entitlement to the individual's family member only while serving as a member of the Armed Forces," however, the Court is more persuaded by LTG Thompson's submission of the document and argument that the Information Paper "contained NO wording of the requirement to transfer the benefit while still on active duty." The court is convinced that though the DOD authored document describes the requirement, the twenty-seven page document was clearly not understood by LTG Thompson and likely would similarly be misunderstood by a reasonable layperson. However, were LTG Thompson to have been counseled by someone more familiar with the document, or similar documents, he would have likely been properly advised of the requirement that he transfer his benefits while on active duty.

ABCMR argues that "[a] soldier should not be granted relief based on unawareness of the law,"—the Court agrees, however, when the ignorance is a direct result of a failure to educate, the soldier cannot be blamed and is entitled to relief. The Court finds it persuasive that the ABCMR recognizes and admits that LTG did not receive the required counseling, in fact, since this matter has been brought to the attention of GOMO they have since adjusted the counseling requirements for active duty officers seeking to retire.

The Court finds that the ABCMR failed to provide a satisfactory explanation for the denial of LTG Thompson's request for correction of his military records. The ABCMR relied on the advisory opinion of

the AHRC, which concluded that the Army conducted a massive public campaign plan and thus LTG Thompson should have been aware of the requirements. In its Reconsideration ruling, the ABCMR recognized that DTM 09–003 requires that "active duty participants be provided individual pre-separation counseling on the Post–9/11 GI Bill benefits," and further found that "evidence of record shows the applicant did not receive information concerning the TEB option during his GOMO retirement processing." The ABCMR also recognized that "while the applicant may have been provided incomplete information on the Post–9/11 GI Bill, he was counseled on the program." The Court does not find this explanation to be satisfactory. The ABCMR failed to explain how the Army's failure to provide LTG Thompson with the required counseling became a non-requirement because there was a public campaign and LTG Thompson had done research. The Army failed to provide LTG Thompson with the required pre-separation counseling and thus the decision to deny his application to correct his record meets the "arbitrary, capricious, or contrary to law" standard.

Furthermore, the Court seeks to correct what it perceives as a grave injustice to LTG Thompson, a man who served his country honorably for 36 years. Courts, in particular the Court of Claims, have not hesitated to afford relief where it serves, as it does here, to right an obvious injustice. *Skaradowski v. United States,* 471 F.2d 627, 632 (Ct.Cl.1973); *Norcross v. United States,* 142 Ct.Cl. 763, 767 (1958); *Stillman v. United States,* 116 F.Supp. 622, 624 (Ct.Cl.1953). The law is replete with decisions holding "that done which ought to have been done." *Skaradowski,* 471 F.2d at 632. "That the laborer is worthy of his hire is gospel as well as the law of life among any just people." *Norcross,* 142 Ct.Cl. at 767. By every tenet of justice and fair play that we have known, the benefits sought by LTG Thompson should be afforded to him.

The Court likens this case to *Prince v. United States,* where the Court of Claims held that where decedent, upon reaching mandatory retirement age, permitted himself to be retired for age, although retirement for disability, to which he was entitled, would have meant the same retired pay, except that such pay would have been exempt from taxation, the subsequent refusal of the ABCMR to correct the form in which decedent's retirement was cast, so as to permit the tax advantage, resulted in grave injustice. 119 F.Supp. 421, 423 (Ct. Cl.1954). Similar, to the facts here, there "the Board recommended that no change be made in Colonel Prince's record, and the Secretary of the Army approved the recommendation." *Id.* at 423. The court went on to find "that the form in which Colonel Prince's retirement had been cast resulted in a grave injustice to him, and that the refusal to give him any relief must have been based upon an unduly rigid adherence to form." *Id.* The Board and the Secretary, the court found, "did not make use of their expressly granted authority 'to remove an injustice.'" *Id.* Accordingly, there the Court awarded Colonel Prince his due rights, much as we do here today for LTG Thompson.

For these reason and the tenets of justice which so define our judiciary, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

The Court grants summary judgment to Plaintiff and denies summary judgment as to Defendants because Plaintiff has adequately shown that the ABCMR's decision was arbitrary, capricious, or contrary to

law and that the tenets of justice require such a ruling. Accordingly, it is hereby

**ORDERED** that Plaintiff Nathaniel R. Thompson, III ("Thompson" or "LTG Thompson")'s Motion for Summary Judgment (Doc. 20) is **GRANTED;** and it is further

**ORDERED** that Defendant United States of America's Motion for Summary Judgment (Doc. 24) is **DENIED.**

**IT IS SO ORDERED.**