# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 21, 2025        Decided March 13, 2026

No. 25-5013

ERNEST F. MITCHELL, LIEUTENANT,
APPELLANT

v.

JOHN PHELAN, HONORABLE, IN HIS OFFICIAL CAPACITY AS THE
SECRETARY OF THE NAVY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-03775)

*Dylan T. Thayer* argued the cause and filed the briefs for appellant. With him on the briefs was *David P. Sheldon*.

*Johnny H. Walker III*, Assistant U.S. Attorney, argued the cause for appellee. *Jeanine Ferris Pirro*, U.S. Attorney, was on the brief. *Jane M. Lyons* and *Fithawi Berhane*, Assistant U.S. Attorneys, entered appearances.

Before: PILLARD and WALKER, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*:

Lieutenant Ernest Mitchell left his post to move his car without telling his Commanding Officer. He was the Command Duty Officer of a guided-missile destroyer.

The Navy penalized Mitchell for his absence from the ship. He sued. The district court held that the Navy's action was reasonable and reasonably explained.

Because we agree, we affirm.

## I. Background

Lieutenant Ernest Mitchell began serving in the U.S. Navy in 2009. In August 2019, the Secretary of the Navy placed him on a selection list for permanent promotion to Lieutenant Commander. The Senate confirmed his nomination shortly after that.

Mitchell likely would have received a presidential appointment to his new rank in August 2020 if all had gone according to plan. It didn't. He received a written reprimand in September 2019 and verbal counseling in October 2019, both regarding a failure to meet standards and to communicate with superiors. Then, while serving aboard a guided-missile destroyer named the *USS Howard* on December 11, 2019, Mitchell again failed to meet standards and to communicate with superiors.

On that day, the *Howard* was scheduled to sail from one pier to another pier located two and a half miles away. So before the *Howard* left the first pier, Mitchell left the ship, drove his car to the second pier, and returned in a Navy duty van. Otherwise, Mitchell's car would have been left behind

back at the first pier when Mitchell arrived with the ship at the second.

Mitchell was gone for at most an hour — and possibly for only 15 minutes. But his absence was without authorization. He did not notify the ship's commanding officer or anyone in his chain of command. Nor did he transfer to a qualified replacement his responsibilities as Command Duty Officer. Those responsibilities included acting as his Commanding Officer's "direct representative on board," remaining "readily available to quickly and effectively respond in the event that a casualty does occur," and preparing the *Howard* to safely depart from port the following day. JA 226.

When Navy officials learned of Mitchell's brief absence from the *Howard*, a host of disciplinary and administrative actions ensued. Five of them are relevant here.

First, the Deputy Chief of Naval Personnel approved the detachment of Mitchell, for cause, from his assignment on the *Howard*. The cause was an "act of misconduct," Naval Military Personnel Manual 1611-020(3)(a), and "[s]ubstandard performance of duty over an extended period of time," *id.* at 1611-020(3)(c).

Second, a Board of Inquiry found that Mitchell had violated Articles 92 and 133 of the Uniform Code of Military Justice by disobeying "a lawful general order" and engaging "in conduct unbecoming an officer and gentleman." JA 120.

Third, following Mitchell's Senate confirmation for promotion to Lieutenant Commander, the promotion was delayed, and about twenty months after the projected date for the promotion, the Secretary of the Navy removed him from the promotion list.

Fourth, the Board for Correction of Naval Records recommended a denial of Mitchell's application (a) to remove from Mitchell's record certain adverse records regarding his performance on the *Howard* and (b) to promote him to Lieutenant Commander.

Fifth, the Secretary of the Navy approved the Correction Board's recommendation and denied Mitchell's application.

In December 2023, Mitchell sued the Secretary of the Navy in district court. He alleged violations of the Administrative Procedure Act. That law requires courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The district court awarded summary judgment to the Secretary of the Navy.

## II. Standard of Review

When litigants challenge factfinding by a Board for Correction of military records, we apply "an unusually deferential application of the 'arbitrary or capricious' standard." *McKinney v. Wormuth*, 5 F.4th 42, 45 (D.C. Cir. 2021) (quoting *Kreis v. Secretary of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). That deference includes a "strong but rebuttable presumption that administrators of the military . . . discharge their duties correctly, lawfully, and in good faith." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (cleaned up).

We review the district court's grant of summary judgment de novo. *McKinney v. Wormuth*, 5 F.4th 42, 45 (D.C. Cir. 2021).

## III. Analysis

Mitchell argues that the decision of the Board for Correction of Naval Records was contrary to law when the Correction Board did not recognize Mitchell's promotion to Lieutenant Commander by operation of law. Mitchell then offers challenges the Board's review of his performance. He argues that the Board was arbitrary and capricious when it found that Mitchell exhibited "[s]ubstandard performance of duty over an extended period." *Id.* at 1611-020(3)(c).

We disagree.

## A. Appointment by Operation of Law?

Mitchell argues that he was appointed to Lieutenant Commander by operation of law because of the time that passed between the date when his promotion was scheduled to take effect and the date when the Secretary removed Mitchell's name from the promotion list. He relies on 10 U.S.C. § 624(d). That statute first specifies circumstances under which appointments may be delayed, *id.* § 624(d)(1), and then provides that an "officer's appointment may not be delayed . . . more than 18 months after the date on which such officer would otherwise have been appointed," 10 U.S.C. § 624(d)(5).

But § 624(d)(5) limits only the duration of a permissible delay — it does not by itself effectuate an appointment. That's apparent from an adjacent provision, § 624(d)(1), which says that a delayed candidate *acquitted* of misconduct "shall be retained on the promotion list" for a promotion on an as-needed

basis. So Mitchell's theory makes the outcome for an *unacquitted* candidate whose proceedings have been delayed (i.e., according to Mitchell, automatic promotion) more favorable than the outcome for an acquitted candidate (i.e., according to § 624(d)(1), retention on the list for a later promotion as needed).

That theory makes little sense, and it would raise constitutional questions. Appointment is a "voluntary act" of the Executive. *Marbury v. Madison*, 5 U.S. 137, 155 (1803). And a "congressionally mandated act is not a voluntary act." *Mitchell v. Del Toro*, No. 1:23-cv-3775, 2024 WL 4891906, at *6 (D.D.C. Nov. 26, 2024).

Because the statute is best read not to mandate appointment of a candidate the Executive has decided against, Mitchell was never appointed.

### B. Substandard Performance of Duty Over an Extended Period?

The Navy Military Personnel Manual provides four reasons for a commanding officer to request that an officer be detached for cause — i.e., removed from the officer's current duty assignment. Naval Military Personnel Manual 1611-020(3). Those reasons include "[s]ubstandard performance of duty over an extended period of time." *Id.* at 1611-020(3)(c).

Here, the Correction Board did not act arbitrarily and capriciously when it found that Mitchell had exhibited a "substandard performance of duty between November 2018 and January 2020." JA 127. Though his fitness reports were often positive, his absence from the *Howard* was unauthorized, and even before then, his record was not unblemished — as documented by the request for detachment. *See, e.g.*, JA 214-

15 (written reprimand in September 2019; verbal counseling in October 2019).

The Navy Military Personnel Manual calls for an assessment based on "the facts and circumstances of the particular case," including whether "specific performance deficiencies . . . continue to exist after corrective action has been taken." Naval Military Personnel Manual 1611-020(3)(c). And the Navy exercised an expertise that we lack when it assessed the facts and circumstances of Mitchell's particular case. Given the judicial deference owed to military factfinders and the persistence of Mitchell's deficiencies after his first reprimand, we hold that the Navy's action was reasonable and reasonably explained.[1]

\* \* \*

We affirm the judgment of the district court.

---

[1] Mitchell also argues that the Board was arbitrary and capricious when it found that he exhibited "gross negligence or complete disregard of duty" pursuant to 1611-020(3)(b) of the Naval Military Personnel Manual. Though the Deputy Chief of Naval Personnel who approved Mitchell's detachment did not use the phrase "gross negligence," *see* JA 204, 212-17, the Board for Correction of Naval Records did, *see* JA 126-27, and Mitchell has argued, here and in the district court, that his conduct was not "gross negligence," *see* *Mitchell v. Del Toro*, Case No. 1:23-cv-3775, 2024 WL 4891906, at *8-9 (D.D.C. Nov. 26, 2024). However, on the record before us, the Board's finding of "[s]ubstandard performance of duty over an extended period of time" independently supports its decision. Indeed, during oral argument, Mitchell's counsel agreed with this. *See* Oral Arg. 11:13-11:33. We need not resolve the question of whether the Board erred when it found that his conduct was gross negligence.

8

*So ordered.*